| | DATE FILED: December 13, 2022 10:51 PM |
|---|---|
| **DISTRICT COURT, DENVER COUNTY, COLORADO** <br> Denver City and County Building <br> 1437 Bannock Street, Room 256 (Clerk's Office) <br> Denver, CO 80202 | FILING ID: 878D011A6F7E8 <br> CASE NUMBER: 2022CV33567 |
| Plaintiff:   **RICHARD JUDSON, JR.** <br><br> v. <br><br> Defendants: **DILLON REAL ESTATE CO., INC.;** <br> **DILLON COMPANIES, INC. (d/b/a KING SOOPERS);** <br> **DILLON COMPANIES, LLC (d/b/a KING SOOPERS;** <br> **and/or d/b/a KING SOOPERS, INC.; and/or d/b/a** <br> **KROGER MOUNTAIN VIEW FOODS);** <br> **THE KROGER CO. (as its own entity, and also d/b/a** <br> **KROGER-MOUNTAIN VIEW FOODS); and** <br> **M755 KROGER CNTRL MFG (a/k/a KROGER** <br> **CONTROL MANUFACTURING).** | ▲COURT USE ONLY▲ |
| **Attorneys for Plaintiff:** <br> Nathan T. Mattison, #38627 <br> Alissa M. Peashka, # 43645 <br> Law Offices of Dianne Sawaya, LLC <br> 4500 Cherry Creek Drive South, Suite 1030 <br> Denver, CO 80246 <br> Phone Number: (303) 758-4777 <br> Fax Number: (303) 758-4779 <br> E-mail: nmattison@dlslawfirm.com; <br> apeashka@dlslawfirm.com | Case Number: <br> **2022CV033567** <br><br> Division: 203 <br><br> Courtroom: The Honorable <br> Jill D. Dorancy |
| **FIRST AMENDED COMPLAINT** ||

Plaintiff, Richard Judson, Jr. **("Plaintiff")**, by and through counsel, for his First Amended Complaint against the Defendants [(1) Dillon Real Estate Co. Inc.; (2) Dillon Companies, Inc. (d/b/a King Soopers); (3) Dillon Companies, LLC (d/b/a King Soopers; and/or d/b/a King Soopers, Inc.; and/or d/b/a Kroger Mountain View Foods); (4) The Kroger Co. (as its own entity, and also d/b/a Kroger-Mountain View Foods); and (5) M755 Kroger Cntrl Mfg (a/k/a Kroger Control Manufacturing) **(collectively, "Defendants")**], states and alleges as follows.

# I. PARTIES

### A. Plaintiff

1. Upon information and belief, at all relevant times, Plaintiff resided in Lamar, <u>Prowers</u> County, Colorado.

2. Upon information and belief, at the time of the incident, which occurred on or about <u>December 14, 2020</u>, giving rise to this suit **("the incident")**, Plaintiff worked for Colorado corporation <u>Rupp's Truck and Trailer Repair Inc d/b/a Rupps Trucking</u> **("Employer")**.

3. Upon information and belief, at all relevant times, Employer's principal place of business's street and mailing addresses were identical, located in <u>Prowers</u> County at 32565 Speculator Circle, Lamar, CO 81052.

4. Upon information and belief, at the time of the incident, Plaintiff worked as a truck driver for Employer, which involved driving its trucks to deliver goods.

5. Upon information and belief, at the time of the incident, Plaintiff was acting within the course and scope of his employment with Employer.

6. Upon information and belief, at the time of the incident, Plaintiff was at an industrial warehouse located in <u>Denver</u> County at 10251 East 51st Avenue, Denver, CO 80239 **("the Property")**, to which he had driven to deliver goods.

### B. Defendant Dillon Real Estate Co., Inc. *("Defendant DRE" or "DRE")*

7. Upon information and belief, at all relevant times, **Defendant Dillon Real Estate Co., Inc.** *("Defendant DRE" or "DRE")* was a foreign corporation incorporated in Kansas.

8. Upon information and belief, at all relevant times, Defendant DRE's principal place of business had a <u>street</u> address of 1014 Vine Street, Cincinnati, Ohio 45202 and a <u>mailing</u> address of 1014 Vine Street, Tax Dept GO7, Cincinnati, Ohio 45202.

9. Upon information and belief, at all relevant times, DRE was an entity registered with the Colorado Secretary of State.

10. Upon information and belief, at all relevant times, DRE's Colorado registered agent was the Corporation Service Company, located at a street address of 1900 West Littleton Boulevard, Littleton, CO 80120.

11. Upon information and belief, at all relevant times, DRE was an entity which was authorized to do, and was doing, business in Colorado, including purchasing, developing, investing in, owning, selling, leasing, and/or managing commercial real estate.

12. Upon information and belief, at all relevant times, DRE's Colorado real estate business activities related to the business activities of itself, its subsidiaries, one or more of its following sister companies, and/or one or more of those companies' subsidiaries, including, but not limited to: **Defendant Dillon Companies, Inc.; Defendant Dillon Companies, LLC; Defendant The Kroger Co.; and/or Defendant Kroger Control Manufacturing.**

13. Upon information and belief, at all relevant times, in part, DRE's Colorado real estate business activities involved industrial warehouses, including the Property.

14. Upon information and belief, based on search results from the City and County of Denver's Property Taxation and Assessment System, DRE has owned the Property, identified as Schedule Number 01151-00-025-000, since 2000, when it was built.

15. Upon information and belief, the incident occurred on an area of the Property containing a Distribution Center **("the Warehouse")** related to the business activities of one or more of the entities listed in paragraph 12, above.

C. **Defendant Dillon Companies, Inc. d/b/a King Soopers** *("Defendant DCI" or "DCI")*

16. Upon information and belief, *at the time of the incident,* **Defendant Dillon Companies, Inc.** *("Defendant DCI" or "DCI")* was a Kansas corporation.

17. Upon information and belief, *at the time of the incident,* Defendant DCI's principal place of business had a street address of 2700 East 4th Street, Hutchinson, Kansas 67501-1903 and the same mailing address as Defendant DRE.

18. Upon information and belief, *at the time of the incident,* DCI was an entity registered with the Colorado Secretary of State.

19. Upon information and belief, *at the time of the incident,* DCI had the same Colorado registered agent as Defendant DRE, at the same address.

20. Upon information and belief, *at the time of the incident,* DCI was an entity which was authorized to do, and was doing, business in Colorado, under various Colorado Secretary of State-registered trade names, including **King Soopers**.

21. Upon information and belief, *at the time of the incident,* DCI's Colorado real estate business activities included, but were not limited to, owning, operating, managing, and/or maintaining commercial real estate.

22. Upon information and belief, at all relevant times, DCI's Colorado real estate business activities related to those of one or more of the entities listed in paragraph 12.

3

23. Upon information and belief, at all relevant times, in part, DCI's Colorado real estate business activities involved industrial warehouses, including the Property.

24. Upon information and belief, *currently,* based on an April 19, 2018 Statement of Conversion (identified by Colorado Secretary of State Entity ID Number 198711042322 and Document Number 20181318171), DCI no longer is doing business in Colorado under the entity name "Dillon Companies, Inc." or the trade name "King Soopers" because the entity "Dillon Companies, Inc." was converted into "Dillon Companies, LLC."

**D. Defendant Dillon Companies, LLC (d/b/a King Soopers; and/or d/b/a King Soopers, Inc.; and/or d/b/a Kroger Mountain View Foods)** *("Defendant DCL" or "DCL")*

25. Upon information and belief, at all relevant times, **Defendant Dillon Companies, LLC** *("Defendant DCL" or "DCL")* was a foreign limited liability company formed in Kansas.

26. Upon information and belief, *currently,* Defendant DCL's principal place of business has the same street and mailing address as Defendant DRE.
.
27. Upon information and belief, at all relevant times, DCL was an entity registered with the Colorado Secretary of State.

28. Upon information and belief, at all relevant times, DCL had the same Colorado registered agent as Defendant DRE, at the same address.

29. Upon information and belief, at all relevant times, DCL was an entity which was authorized to do, and was doing, business in Colorado, under various Colorado Secretary of State-registered trade names, including:
    a. **King Soopers; and/or**
    b. **King Soopers, Inc.; and/or**
    c. **Kroger Mountain View Foods.**

30. Upon information and belief, at all relevant times, DCL participated in the same Colorado business activities as Defendant DCI, as described in paragraph 21, above.

31. Upon information and belief, at all relevant times, DCL's Colorado business activities related to those of one or more of the entities listed in paragraph 12.

32. Upon information and belief, at all relevant times, in part, DCL's Colorado business activities involved warehouses, including the Property.

### E. Defendant The Kroger Co. (as its own entity, and also d/b/a Kroger-Mountain View Foods) *("Defendant Kroger" or "Kroger")*

33.     Upon information and belief, at all relevant times, **Defendant The Kroger Co.** *("Defendant Kroger" or "Kroger")* was a foreign corporation incorporated in Ohio.

34.     Upon information and belief, at all relevant times, Defendant Kroger's principal place of business had the same street and mailing address as Defendant DRE.

35.     Upon information and belief, at all relevant times, Kroger was an entity registered with the Colorado Secretary of State.

36.     Upon information and belief, at all relevant times, Kroger had the same Colorado registered agent as Defendant DRE, at the same address.

37.     Upon information and belief, at all relevant times, Kroger was an entity which was authorized to do, and was doing, business in Colorado, both under its own name and under various Colorado Secretary of State-registered trade names, including **Kroger-Mountain View Foods**.

38.     Upon information and belief, at all relevant times, Kroger participated in the same Colorado business activities as Defendant DCI, as described in paragraph 21.

39.     Upon information and belief, at all relevant times, Kroger's Colorado business activities related to those of one or more of the entities listed in paragraph 12.

40.     Upon information and belief, at all relevant times, in part, Kroger's Colorado business activities involved warehouses, including the Property.

41.     More specifically, upon information and belief, at all relevant times, suppliers, vendors, and delivery people traveled to and from the Property to provide goods to Kroger to be sold by one or more of the entities listed in paragraph 12.

42.     Additionally, upon information and belief, at all relevant times, at the Property, Kroger stored these goods that it received.

### F. Defendant M755 Kroger Cntrl Mfg (a/k/a Kroger Control Manufacturing) *("Defendant Manufacturing" or "Manufacturing")*

43.     Upon information and belief, at all relevant times, **Defendant M755 Kroger Cntrl Mfg (a/k/a Kroger Control Manufacturing)** *("Defendant Manufacturing" or "Manufacturing")* was a foreign entity formed in either Ohio or Kansas.

44. Upon information and belief, at all relevant times, Defendant Manufacturing's principal place of business had the same street and mailing address as Defendant DRE.

45. Upon information and belief, at all relevant times, Manufacturing was <u>not</u> an entity registered with the Colorado Secretary of State.

46. Upon information and belief, at all relevant times, Manufacturing was doing business in Colorado.

47. Upon information and belief, at all relevant times, Manufacturing participated in the same Colorado business activities as Defendant DCI, as described in paragraph <u>21</u>.

48. Upon information and belief, at all relevant times, Manufacturing's Colorado business activities related to those of one or more of the entities listed in paragraph <u>12</u>.

49. Upon information and belief, at all relevant times, in part, Manufacturing's Colorado business activities involved warehouses, including the Property.

50. More specifically, upon information and belief, at all relevant times, Manufacturing personnel worked at the Property to manufacture goods to be sold by one or more of the entities listed in paragraph <u>12</u>.

G. **Subject Tort(s)**

51. Upon information and belief, **one or more of the Defendants** committed one or more torts **["the tort(s)"]** arising out of their ownership of, investment in, financing of, and/or performance of operations, management, service, repair, cleaning, control, or other activities at or on the Property, forming the basis for this suit.

## II. JURISDICTION AND VENUE

52. Jurisdiction is proper pursuant to Article 6 § 9 of the Colorado State Constitution.

53. Venue is proper in <u>Denver</u> County because:

   a. **All of the Defendants** are non-residents of Colorado; therefore, this action on a tort may be tried in any Colorado county where any of them may be found. [C.R.C.P. 98(c)(1)].

   b. It is where **one or more of the Defendants** committed the tort(s) [C.R.C.P. 98(c)(5)].

### III. **GENERAL AND FACTUAL ALLEGATIONS**

54. Plaintiff incorporates by reference the paragraphs above, as if set forth fully here.

55. Upon information and belief, one or more of the Defendants require drivers delivering goods to the Warehouse on the Property to request a specific delivery date and time.

56. Upon information and belief, after one or more of the Defendants receive the driver's delivery request, they assign the driver a specific delivery date and a time window within which the delivery must be completed.

57. Upon information and belief, on or about December 14, 2020, Plaintiff checked in with Warehouse personnel around 9:24 p.m. for an 11 p.m. appointment to deliver frozen goods to a freezer at the Warehouse.

58. Upon information and belief, Warehouse personnel directed Plaintiff to park at Dock #6.

59. Upon information and belief, one or more of the Defendants require Warehouse personnel receiving deliveries to complete paperwork acknowledging receipt of the goods.

60. Upon information and belief, around 10:45 p.m. that day, Warehouse personnel called Plaintiff and told him that his delivery paperwork was ready for him to pick up.

61. Upon information and belief, Plaintiff went inside the Warehouse and obtained the paperwork.

62. Upon information and belief, Plaintiff then left the Warehouse and began walking back to his truck via a concrete sidewalk containing some concrete stairs.

63. Upon information and belief, at the time of the incident, the weather was snowy, windy, and cold, and there was snow and ice on the sidewalk, making it slippery.

64. Upon information and belief, at the time of the incident, none of the Defendants, or their employees and/or agents, had taken action to remove and/or mitigate the snow and/or ice, including, but not limited to, shoveling it and/or applying ice melt on top of it.

65. Upon information and belief, while walking down the sidewalk on his way back to his truck, Plaintiff had reached some stairs, which he had started to descend when he became blinded by a bright light, and he slipped on the icy and/or snowy stairs and fell **("the incident")**.

66. Upon information and belief, immediately before and at the time of the incident, Plaintiff had considered the weather conditions and, accordingly, took action to protect himself from any potential danger, including, but not limited to:

    a. wearing proper footwear;

    b. walking carefully and cautiously;

    c. observing the surrounding environment for any potential dangers; and

    d. minimizing or eliminating distractions.

67. Upon information and belief, the incident caused Plaintiff to sustain bodily injuries.

68. Upon information and belief, shortly after the incident, Plaintiff went to North Suburban Medical Center for emergency evaluation and treatment of his injuries.

69. Upon information and belief, Plaintiff developed other injuries, conditions, and symptoms due to the incident.

70. Upon information and belief, Plaintiff subsequently sought and obtained other treatment from various health care providers for his incident-related injuries, conditions, and symptoms.

71. Upon information and belief, as a result of his injuries caused by the incident, Plaintiff incurred damages and losses.

72. Plaintiff was not comparatively negligent in contributing to or causing either the incident or any of his injuries, damages, and losses.

73. At all relevant times, Plaintiff mitigated his injuries, damages, and losses resulting from the incident.

### IV. CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF:**
**Colorado Premises Liability Act [C.R.S. §13-21-115(3)(c)]:**
**Liability to Invitee (*Against ALL Defendants*)**

74. Plaintiff incorporates by reference the paragraphs above, as if set forth fully here.

75. At the time of the incident, one or more of the Defendants qualified as a "landowner" of the Property, within the meaning of C.R.S. §13-21-115, because:

   a. it was an authorized agent or a person in possession of the Property; and/or

   b. it was a person legally responsible:

      i. for the condition of the Property; and/or

      ii. for the activities conducted or circumstances existing on the Property.

76. At the time of the incident, Plaintiff was an employee of Employer and was acting within the course and scope of his employment by delivering goods to Warehouse personnel.

77. Upon information and belief, at all relevant times, Employer's drivers, including Plaintiff, delivered goods to the Warehouse pursuant to a written agreement, which was in full force and effect, between Employer and one or more of the Defendants.

78. The agreement meant that one or more of the Defendants expressly and/or impliedly represented to Employer that its employees, including Plaintiff, were requested, expected, or intended to enter onto or remain on the Property.

79. As a result, at the time of the incident, Plaintiff was an "invitee" on the Property, within the meaning of C.R.S. §13-21-115(3)(c), (5)(a).

80. Because Plaintiff was an "invitee," one or more of the Defendants owed Plaintiff a duty to use reasonable care to protect him against any dangers on the Property.

81. At the time of the incident, the Property contained a dangerous condition: namely, snow and/or ice on the sidewalk and/or stairs.

82. This dangerous condition caused Plaintiff to slip and, as a result, sustain injuries, damages, and losses, including, but not limited to: bodily injuries; permanent physical impairment and/or disfigurement; economic damages, including, but not limited to: past and future medical expenses (including medical bills, medical mileage, and out-of-pocket expenses) and past and future wage loss (including lost wages, lost earning capacity, and loss of time); and non-economic damages (including mental anguish, pain and suffering, loss of enjoyment of life, and inconvenience).

83. One or more of the Defendants actually knew about this dangerous condition, or, as a person or entity using reasonable care, should have known about this dangerous condition.

84. One or more of the Defendants failed to use reasonable care to protect Plaintiff from injuries, damages, and losses resulting from this dangerous condition.

85. The failure to do so by one or more of the Defendants was a cause of Plaintiff's injuries, damages, and losses.

## SECOND CLAIM FOR RELIEF:
### Colorado Premises Liability Act [C.R.S. §13-21-115(3)(c)]:
### Liability to Licensee (*Against ALL Defendants*)

*[IN THE ALTERNATIVE to Plaintiff's First Claim for Relief]*

86. Plaintiff incorporates by reference the paragraphs above, as if set forth fully here.

87. At the time of the incident, one or more of the Defendants qualified as a "landowner" of the Property, within the meaning of C.R.S. §13-21-115, because:

   a. it was an authorized agent or a person in possession of the Property; and/or

   b. it was a person legally responsible:

      i. for the condition of the Property; and/or

      ii. for the activities conducted or circumstances existing on the Property.

88. At the time of the incident, Plaintiff was an employee of Employer and was acting within the course and scope of his employment by delivering goods to Warehouse personnel.

89. Upon information and belief, at all relevant times, Employer's drivers, including Plaintiff, delivered goods to the Warehouse pursuant to a written agreement, which was in full force and effect, between Employer and one or more of the Defendants.

90. The agreement meant that one or more of the Defendants gave permission or consent to Employer's employees, including Plaintiff, to work on the Property.

91. Plaintiff's employment with Employer represented his entrance onto or remaining on the Property for his own convenience or to advance his own interest.

92. As a result, at the time of the incident, Plaintiff was a "licensee" on the Property, within the meaning of C.R.S. §13-21-115(3)(b), (5)(b).

*[continued on the next page]*

93. Because Plaintiff was a "licensee," one or more of the Defendants owed Plaintiff a duty to use reasonable care:

   a. with respect to a danger on the Property which one or more of the Defendants <u>created</u>, and about which they <u>actually</u> knew, before Plaintiff incurred any injuries, damages, or losses; and

   b. to warn about a danger on the Property which one or more of the Defendants did <u>not</u> create, but about which they <u>actually</u> knew, and which was <u>not</u> a danger that ordinarily would be present in an industrial warehouse setting, such as the Property.

94. At the time of the incident, the Property contained a dangerous condition: namely, snow and/or ice on the sidewalk and/or stairs.

95. This dangerous condition caused Plaintiff to slip and, as a result, sustain injuries, damages, and losses, including, but not limited to: bodily injuries; permanent physical impairment and/or disfigurement; economic damages, including, but not limited to: past and future medical expenses (including medical bills, medical mileage, and out-of-pocket expenses) and past and future wage loss (including lost wages, lost earning capacity, and loss of time); and non-economic damages (including mental anguish, pain and suffering, loss of enjoyment of life, and inconvenience).

96. Snow and/or ice on the sidewalk and/or stairs was not a danger that ordinarily would be present if one or more of the Defendants had:

   a. taken appropriate action to remove and/or mitigate the snow and/or ice; and/or

   b. directed their employees and/or agents to perform these actions; and/or

   c. ensured that their employees and/or agents performed these actions properly.

97. Such appropriate actions would have included, but not been limited to, shoveling the snow and/or ice and/or applying ice melt on top of it.

98. One or more of the Defendants:

   a. <u>created</u> this dangerous condition *[by not performing the actions detailed in Paragraphs 96 and 97, above]*, and <u>actually</u> knew about it before Plaintiff incurred any injuries, damages, or losses; <u>or</u>

   b. did <u>not</u> create this dangerous condition, but <u>actually</u> knew about it, and it was <u>not</u> a danger that ordinarily would be present in an industrial warehouse setting, such as the Property *[if they had performed the actions detailed in Paragraphs 96 and 97, above]*.

99. One or more of the Defendants failed to use reasonable care:

   a. with respect to these dangerous conditions which they <u>created</u> *[as detailed in Paragraphs <u>96 through 98</u>, above]*, and about which they <u>actually</u> knew, before Plaintiff incurred any injuries, damages, or losses; <u>and/or</u>

   b. to warn about these dangerous conditions which they did <u>not</u> create, but about which they <u>actually</u> knew, and which were <u>not</u> dangers that ordinarily would be present in an industrial warehouse setting, such as the Property *[as detailed in Paragraphs <u>96 through 98</u>, above]*.

100. The failure to do so by one or more of the Defendants was a cause of Plaintiff's injuries, damages, and losses.

### **THIRD CLAIM FOR RELIEF**:
### <u>Negligence</u> *(Against <u>ALL</u> Defendants)*

### *[IN THE <u>ALTERNATIVE</u> to Plaintiff's <u>First</u> <u>AND</u> <u>Second</u> Claims for Relief]*

101. Plaintiff incorporates by reference the paragraphs above, as if set forth fully here.

102. One or more of the Defendants owed a duty to Plaintiff to exercise reasonable care in maintaining the Property to keep it free of dangerous conditions and/or remove and/or mitigate any dangerous conditions.

103. At the time of the incident, the Property contained a dangerous condition: namely, snow and/or ice on the sidewalk and/or stairs.

104. One or more of the Defendants breached their duty to Plaintiff by failing to exercise reasonable care in maintaining the Property *[by not performing the actions detailed in Paragraphs <u>96 and 97</u>, above]*.

105. One or more of the Defendants' breach of their duty to Plaintiff caused the incident to occur.

106. One or more of the Defendants' breach of their duty to Plaintiff, resulting in the incident, caused Plaintiff sustain injuries, damages, and losses, including, but not limited to: bodily injuries; permanent physical impairment and/or disfigurement; economic damages, including, but not limited to: past and future medical expenses (including medical bills, medical mileage, and out-of-pocket expenses) and past and future wage loss (including lost wages, lost earning capacity, and loss of time); and non-economic damages (including mental anguish, pain and suffering, loss of enjoyment of life, and inconvenience).

## V. REQUEST FOR RELIEF

WHEREFORE, the Plaintiff, Richard Judson, Jr., respectfully requests that judgment be entered in his favor, and against the Defendants [(1) Dillon Real Estate Co. Inc.; (2) Dillon Companies, Inc. (d/b/a King Soopers); (3) Dillon Companies, LLC (d/b/a King Soopers; and/or d/b/a King Soopers, Inc.; and/or d/b/a Kroger Mountain View Foods); (4) The Kroger Co. (as its own entity, and also d/b/a Kroger-Mountain View Foods); and (5) M755 Kroger Cntrl Mfg (a/k/a Kroger Control Manufacturing)], in an amount, to be determined at trial, to fairly compensate Plaintiff for his injuries, damages, and losses, including, but not limited to:

- bodily injuries;
- permanent physical impairment and/or disfigurement;
- economic damages, including, but not limited to: past and future medical expenses (including medical bills, medical mileage, and out-of-pocket expenses) and past and future wage loss (including lost wages, lost earning capacity, and loss of time);
- non-economic damages (including mental anguish, pain and suffering, loss of enjoyment of life, and inconvenience);
- interest (including post-incident, pre-filing, and post-filing interest) per statute and as otherwise permitted under Colorado law;
- costs (including, but not limited to, court costs and expert witness fees);
- reasonable attorney's fees per statute and as otherwise permitted under Colorado law; and
- such other and further relief as the Court deems just and proper.

Dated: Tuesday, December 13, 2022.

Respectfully submitted,

**LAW OFFICES OF DIANNE SAWAYA, LLC**

*s/ Alissa M. Peashka*
Nathan T. Mattison, Esq.
Alissa M. Peashka, Esq.
*Attorneys for Plaintiff*

Plaintiff's address:
c/o Law Offices of Dianne Sawaya, LLC
4500 Cherry Creek Drive South, Suite 1030
Denver, CO 80246